IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | | |
|---|---|---|
| SERGIO OMAR FLORES, | § | |
| Petitioner, | § | |
| | § | NO. 2:11-CV-247-J (BB) |
| v. | § | (2:10-CR-039-J) |
| | § | |
| UNITED STATES OF AMERICA, | § | **ECF (Referred to U.S. Magistrate)** |
| Respondent. | § | |
| | § | |

## <u>RESPONSE TO MOTION UNDER 28 U.S.C. § 2255</u>

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

*s/ Frank L. Gatto*
FRANK L. GATTO
Assistant United States Attorney
Texas Bar No. 24062396
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817.252.5213
Facsimile: 817.252.5514
E-mail: Frank.Gatto@usdoj.gov

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

RESPONSE TO MOTION UNDER 28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A. Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B. Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A. Search of Car . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B. Flores's Mental Health . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      C. Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Cady v. Dombrowski*, 413 U.S. 433 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cullen v. Pinholster*, 131 S. Ct. 1388 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Deville v. Whitley*, 21 F.3d 654 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Harrington v. Richter*, 131 S. Ct. 770 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Massaro v. United States*, 538 U.S. 500 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Miller v. Johnson*, 200 F.3d 274 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Peguero v. United States*, 526 U.S. 23 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Premo v. Moore*, 131 S. Ct. 733 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Roe v. Flores-Ortega*, 528 U.S. 470 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith v. Puckett*, 907 F.2d 581 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Terry v. Ohio*, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*United States v. Addonizio*, 442 U.S. 178 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Arvizu*, 534 U.S. 266 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Ballard*, 779 F.2d 287 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Capua*, 656 F.2d 1033 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Cervantes*, 132 F.3d 1106 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 11

*United States v. Davis*, 61 F.3d 291 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Frady*, 456 U.S. 152 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Green*, 882 F.2d 999 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Hughes*, 635 F.2d 449 (5th Cir. Unit B 1981) . . . . . . . . . . . . . . . . . . 7, 8

*United States v. Mata*, 517 F.3d 279 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Pack*, 612 F.3d 341 modified at 622 F.3d 383 (5th Cir. 2010) . . . . 11, 13

*United  States v. Palmer*, 45 F.3d 484 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Sanders*, 157 F.3d 302 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Stewart*, 207 F.3d 750 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Whren v. United States*, 517 U.S. 806 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Federal Statutes**

21 U.S.C. §841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,4

iv

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | | |
|---|---|---|
| SERGIO OMAR FLORES, | § | |
| Petitioner, | § | |
| | § | NO. 2:11-CV-247-J (BB) |
| v. | § | (2:10-CR-039-J) |
| | § | |
| UNITED STATES OF AMERICA, | § | **ECF (Referred to U.S. Magistrate)** |
| Respondent. | § | |

## RESPONSE TO MOTION UNDER 28 U.S.C. § 2255

Except for the part of this response addressing Sergio Flores's ("Flores") appellate rights (Part C below), the government opposes Flores's section 2255 motion because he fails to satisfy *Strickland*'s demanding burdens of showing constitutionally deficient performance and prejudice. Regarding his appellate rights, the record appears to show that this Court failed to give Flores the required admonishments under Federal Rule of Criminal Procedure 32(j)(1)(B). Based on Flores's lack of clarity on this issue and concerns regarding the waiver of the attorney-client privilege, further inquiry by this Court may be appropriate to determine whether Flores was aware of his appellate rights, rendering this Court's failure to admonish him harmless, and whether Flores ever informed his attorney of his desire to appeal his sentence.

# I.     BACKGROUND

## A.     Statement of the Case

On November 19, 2010, Flores was sentenced to 235 months in prison and a five-year term of supervised release after he pled guilty, in accordance with a plea agreement, to trafficking in 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).  He did not appeal, but timely filed his first section 2255 motion on October 19, 2011.

## B.     Facts[1]

On June 13, 2010, Texas State Trooper Jason Kruger ("Trooper Kruger") conducted a traffic stop on Flores that resulted in the recovery of nearly 6 kilograms of ice methamphetamine concealed in Flores's car.  Ice methamphetamine is methamphetamine that has a purity concentration of over 80% methamphetamine hydrochloride.  The ice methamphetamine recovered from Flores's car ranged between 95-to-100 percent pure.

Flores was driving a 2001 Chevrolet Impala on Interstate 40 in Wheeler County, Texas, when Trooper Kruger pulled him over for speeding.  Flores gave Trooper Kruger an Arizona identification card and an insurance card, but claimed he had an Arizona driver's license that he had lost.  He also claimed to be driving to Oklahoma to visit his mother.

---

[1] Unless expressly cited from a different source, the facts are from the presentence report and factual résumé.  Any citation to document number ("Doc. #") refers to the docket entry in the underlying criminal case.

**Response to Motion Under 28 U.S.C. § 2255  - Page 2**

Trooper Kruger's suspicions began when he noticed Flores was nervous and would not maintain eye contact.  He saw the car insurance was recently purchased and noted an unusually strong odor of air freshener.  Trooper Kruger's suspicions were further raised when record checks revealed Flores had a suspended Texas driver's license, and he did not have an Arizona driver's license as claimed.  Trooper Kruger confronted Flores with his findings, and Flores explained he had previously lived in El Paso, Texas, and continued to claim that he had an Arizona driver's license.  Trooper Kruger asked Flores who owned the car, and Flores claimed he was buying the car from a person named "Adrian," but he could not provide "Adrian's" last name.

At this point Trooper Kruger had Flores get out of the car.  He noticed a second set of New Mexico license plates on the front seat.  The plates were registered to a Ramon Serna in Las Cruces, New Mexico, and Flores claimed Serna had placed the car in "Adrian's" name.

Trooper Kruger asked and received Flores's voluntary consent to search the car.  Wrapped in brown tape and concealed in the rear quarter panels inside the car's trunk were eight packages of methamphetamine.  Flores was arrested and taken with his car to the police station in Shamrock, Texas.

A further search of the car revealed five more packages of methamphetamine hidden inside the seat cushion of the back seat.  All of the methamphetamine was tested, and results confirmed the presence of nearly 6 kilograms of 95-to-100 percent pure methamphetamine.  After waiving his *Miranda* rights, Flores admitted he knew there was

**Response to Motion Under 28 U.S.C. § 2255  - Page 3**

methamphetamine in the car and said he had been hired to transport it from Arizona to

Kansas City, Kansas, for $1,000.  He explained that his son wanted a video game, but he

could not afford it.  After his arrest, Flores said he realized he took a big risk and that it

was "not worth it."  (PSR ¶ 17.)

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set

aside, or correct his conviction or sentence.  It provides four grounds: "(1) the sentence

was imposed in violation of the Constitution or laws of the United States; (2) the court

was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory

maximum sentence; or (4) the sentence is otherwise subject to collateral attack."  *United

States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (internal marks omitted).

When a prisoner has pled guilty, he will successfully challenge his convictions

under section 2255 only "if: (1) the plea was not entered voluntarily or intelligently, . . .

or (2) the [prisoner] establishes that he is actually innocent of the underlying crime."

*United States v. Sanders*, 157 F.3d 302, 305 (5th Cir. 1998).  The prisoner bears a heavy

burden to convince the court that his guilty plea was involuntary after testifying to its

voluntariness in court.  *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994).  This is

because solemn declarations in open court carry a strong presumption of verity.  *United

States v. Palmer*, 45 F.3d 484, 491 (5th Cir. 2006).

"It has, of course, long been settled law that an error that may justify reversal on

direct appeal will not necessarily support a collateral attack on a final judgment."  *United

*States v. Addonizio*, 442 U.S. 178, 184, (1979).  "Section 2255 does not offer recourse to

all who suffer trial errors."  *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).

And it "may not do service for an appeal."  *United States v. Frady*, 456 U.S. 152, 165

(1982).  After conviction and the exhaustion or waiver of all appeals, the Court is

"entitled to presume" that the prisoner "stands fairly and finally convicted."  *Id.* at 164.

Instead, section 2255 is "reserved for transgressions of constitutional rights and for

that narrow compass of other injury that could not have been raised on direct appeal and,

would, if condoned, result in a complete miscarriage of justice."  *Capua*, 656 F.2d at

1037.  In other words, the "scope of relief under § 2255 is consistent with that of the writ

of habeas corpus."  *Placente*, 81 F.3d at 558.

Claims that counsel was ineffective is a constitutional transgression that can be

raised under section 2255.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Ineffective-assistance claims are governed by the now-familiar two-prong test established

in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, the prisoner must prove his

counsel's performance was deficient by identifying specific acts or omissions that were

not the result of reasonable professional judgment.  *Strickland*, 466 U.S. at 690.  Second,

the prisoner must prove that his counsel's deficient performance resulted in prejudice by

showing counsel's errors "so undermined the proper functioning of the adversarial

process that the trial cannot be relied on as having produced a just result."  *Cullen v.

Pinholster*, 131 S. Ct. 1388, 1403 (2011) (internal marks omitted).  Put another way, the

prisoner must prove that but for counsel's errors, "there is a reasonable probability that"

**Response to Motion Under 28 U.S.C. § 2255  - Page 5**

the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693-94.

"That requires a substantial, not just conceivable, likelihood of a different result."

*Pinholster*, 131 S. Ct. at 1403. Simply making "conclusory allegations" of deficient

performance and prejudice is insufficient to meet the *Strickland* test. *Miller v. Johnson*,

200 F.3d 274, 282 (5th Cir. 2000).

"Recognizing the temptation for a defendant to second-guess counsel's assistance

after conviction or adverse sentence," the Supreme Court recently reemphasized "that

counsel should be strongly presumed to have rendered adequate assistance and made all

significant decisions in exercise of reasonable professional judgment." *Pinholster*, 131 S.

Ct. at 1403 (internal marks omitted). The Court also cautioned that ineffective-assistance

claims "can function as a way to escape rules of waiver and forfeiture and raise issues not

presented at trial . . . ." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal marks

omitted). Thus, the Court has admonished that "the *Strickland* standard must be applied

with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very

adversary process the right to counsel is meant to serve." *Id.* It reminded that in applying

*Strickland*, "the standard for judging counsel's representation is a most deferential one,"

and a court must be mindful that "the attorney observed the relevant proceedings, knew of

materials outside the record, and interacted with the client, with opposing counsel, and

with the judge." *Id.* Importantly, the Court reaffirmed that "the purpose of the effective

assistance guarantee of the Sixth Amendment is not to improve the quality of legal

representation . . . [but] simply to ensure that criminal defendants receive a fair trial."

**Response to Motion Under 28 U.S.C. § 2255  - Page 6**

*Pinholster*, 131 S. Ct. at 1403 (brackets in original, internal marks omitted).  And it is the defendant's burden to prove his counsel was deficient; it is not the government's burden to prove his counsel was competent.  *Premo v. Moore*, 131 S. Ct. 733, 739 (2011) (internal marks omitted).

Thus, "[s]urmounting *Strickland's* high bar is never an easy task."  *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010).  The claim fails if the prisoner does not satisfy either the deficient-performance or prejudice prongs.  *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).  And a court need not address both components if there is an insufficient showing on one.  *Id.*

A motion under section 2255 does not automatically require a hearing.  *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B 1981); *see also* Rule 8 of the Rules Governing Section 2255 Proceedings.  "When the files and records of a case make manifest the lack of merit of a section 2255 claim, the trial court is not required to hold an evidentiary hearing."  *Hughes*, 635 F.2d at 451.

## III.   ANALYSIS

Dissatisfied with the outcome of his case, Flores—naturally—blames his attorney. He presents two allegations of ineffective assistance, both of which share a commonality: they both rest, at least in part, on Flores's claim that he suffers from a diminished mental capacity.  (Memo. at 2–3, 7.)  He uses this to argue that, among other things, his attorney was constitutionally deficient for failing to move to suppress the evidence found in his car

**Response to Motion Under 28 U.S.C. § 2255  - Page 7**

during the consensual search, and for failing to failing to investigate his mental health "for the sentencing phase."  (*Id.*)

### A.    Search of Car

Flores faults his attorney for not moving to suppress the evidence seized during his traffic stop.  (Mem. at 2; Mot. at 4.)  He complains that his attorney did not "challenge the voluntariness" of his consent due to his "mental disorders."  (*Id.*)  He also faults his attorney because he argues Trooper Kruger lacked reasonable suspicion and probable cause.  (Memo. at 3–4.)  Flores contends that since records checks had revealed he did not have any outstanding warrants and the plates found in the car "came back clear," his attorney should have argued that Trooper Kruger "had no reasonable suspicion, nor probable cause to search the vehicle."  (*Id.* at 3.)

"A consensual search is [a] well-established exception to the Fourth Amendment's warrant requirement."  *United States v. Mata*, 517 F.3d 279, 290 (5th Cir. 2008).  Free and voluntary consent will justify a warrantless search.  *Id.*  The record here shows Flores gave his free and voluntary consent to search his car.  Indeed, Flores does not contend that he was coerced; instead, he contends he lacked the mental capacity to give voluntary consent.  He provides no evidence to support his claim other than to point to paragraphs 59–65 of the presentence report, which details a long history of diagnosed mental disorders.  The record, however, belies his claim that his mental disorders prevented him from giving voluntary consent or understanding the nature of his actions.

First, at all times during his criminal case, Flores was represented by counsel. He signed a plea agreement where he acknowledged:

> The defendant has thoroughly reviewed all legal and factual aspects of this case with his lawyer and is fully satisfied with that lawyer's legal representation. The defendant has received from his lawyer explanations satisfactory to him concerning each paragraph of this plea agreement, each of his rights affected by this agreement, and the alternatives available to him other than entering into this agreement. Because he concedes that he is guilty, and after conferring with his lawyer, the defendant has concluded that it is in his best interests to enter into his plea agreement and all its terms, rather than proceed to trial in this case.

(Plea Agreement at ¶ 10.) Second, nothing in his colloquy with this Court at his rearraignment reveals his mental disorders had any affect on his ability or capacity to give voluntary consent to search his car. At the rearraignment, this Court correctly admonished Flores as to (1) his constitutional rights; (2) his potential sentence; (3) the role of the sentencing guidelines and the judge in determining a sentence; (4) the consequences of waiving his rights and pleading guilty; (5) the terms of his plea agreement; and (6) the nature of the charge he intended to plead guilty to and the elements to that charge. (Rearraignment Tr. at 4–12.) Under oath, he repeatedly told this Court he fully understood this Court's admonishments. (*Id.*) He also told this Court that he was satisfied with his attorney's representation; and that he had read the indictment, the plea agreement, and the factual résumé and understood all of them. (*Id.*) After having the facts in the factual résumé read into the record, Flores told this Court all of the facts were true. (*Id.* at 12.) And he told this Court that no one threatened him or forced him to plead guilty. (*Id.* at 8.) Throughout the entire thorough inquiry, nothing in the record

**Response to Motion Under 28 U.S.C. § 2255  - Page 9**

reveals anything in his responses or his conduct that should have alerted this Court or any party that Flores may lack the mental capacity to freely and intelligently plead guilty. *See United States v. Davis*, 61 F.3d 291, 304 (5th Cir. 1995) ("Whether reasonable cause exists to put the court on notice that the defendant might be mentally incompetent is left to the sound discretion of the district court.").

Third, the presentence report shows Flores's mental disorders had no impact on his competence. It recounts:

> On September 9, 2010, this officer interviewed the defendant at the Randall County Jail in Canyon, Texas, for the purpose of gathering information for the Presentence Report. The defendant was cooperative and provided information this officer requested. This officer contacted the defendant's mother who verified the family and personal history information.

(PSR ¶ 51.) The presentence report also recounts:

> The defendant stated he agreed to transport the methamphetamine in exchange for $1,000. He explained his son wanted a video game, and he could not afford the game. The defendant indicated he realizes he took a big risk and it was "not worth it." The defendant expressed remorse and indicated he plans to "stay clean, work, and get an education."

(PSR ¶ 17.) Clearly, nothing in the interview with the probation officer arose concerns that Flores may lack mental capacity. And despite detailing an extensive history of mental disorders (PSR ¶¶ 59–65), nothing in the presentence report indicates that Flores was ever found to be incompetent. Indeed, none of the mental-disorder diagnoses include a diagnosis that Flores lacked mental capacity.

Taken together, the record as a whole belies his claim that his mental disorders had any affect on his ability to voluntary consent to the search of his car. Thus, Flores's self-

**Response to Motion Under 28 U.S.C. § 2255 - Page 10**

serving and after-the-fact revisions are unsubstantiated and should be rejected because he

has failed to produce any "independent indica of the likely merit of [his] allegations."

*United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

Likewise, Flores's claim that Trooper Kruger lacked reasonable suspicion is

equally meritless.  The legality of traffic stops under the Fourth Amendment is analyzed

under *Terry v. Ohio*, 392 U.S. 1 (1968), using a two-part inquiry.  *United States v. Pack*,

612 F.3d 341, 349–350, modified at 622 F.3d 383 (5th Cir. 2010).  First, the court

examines whether the traffic stop was justified at its inception.  *Id.* at 350.  Second, the

court determines whether the officer's subsequent actions were reasonably related to the

cause of the stop.  *Id.*

When conducting the initial traffic stop, "an officer may examine driver's licenses

and vehicle registrations and run computer checks."  *Id.*  The officer "may also ask about

the purpose and itinerary of the occupants' trip as part of this investigation, because . . .

these questions" are considered "to be reasonably related in scope to his investigation of

the circumstances that caused the stop."  *Id.*  And an officer may ask questions unrelated

to the cause of the stop so long as they do not extend the duration of the stop.  *Id.*  But,

> If the officer develops reasonable suspicion of additional criminal activity
> during his investigation of the circumstances that originally caused the stop,
> he may further detain its occupants for a reasonable time while appropriately
> attempting to dispel this reasonable suspicion.

*Id.*

**Response to Motion Under 28 U.S.C. § 2255  - Page 11**

Reasonable suspicion exists when the peculiar circumstances of a case reveal an "objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The detaining officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21-22. "The ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski,* 413 U.S. 433, 440 (1973). Constitutional reasonableness is not "based on the actual motivations of individual officers," *Whren v. United States,* 517 U.S. 806, 813 (1996), but on "the totality of the circumstances of each case," *Arvizu*, 534 U.S. at 273.

> The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?

*Terry,* 392 U.S. at 21-22. Due weight must be given to the reasonable inferences the officer is entitled to draw from the specific articulable facts. *Id.* at 27.

The initial stop of Flores was valid; he was speeding. Flores does not seem to contest this, but even if he did, he presents no evidence to show otherwise. At the initial stop, Trooper Kruger asked for Flores's license and insurance, and asked about his travels, all valid under the Fourth Amendment. *Pack*, 612 F.3d at 350. During his

investigation of the stop, Trooper Kruger's suspicions of legal wrongdoing arose when:
(1) Flores appeared nervous, and avoided eye contact; (2) the car had an unusual strong
odor from an air freshener (a reasonable inference being it is trying to mask the odor of
illegal drugs); (3)  Flores did not have a driver's license on him; (4) computer records
checks contradicted Flores's claim that he had a valid Arizona driver's license; (5)
computer records checks revealed Flores had a suspended Texas driver's license; (6)
Flores was vague about who owned the car; and (7) another set of plates registered to the
car was found that identified the owner as someone different than what Flores claimed.
From these facts, it was certainly reasonable for Trooper Kruger to suspect criminal
activity may be afoot.  Thus, to any extent Trooper Kruger's seeking consent to search
Flores's car extended the duration of the stop beyond the initial cause for the stop, he
clearly had a constitutionally objective and reasonable bases for doing so.

Finally, Flores's contention that Trooper Kruger's search of the secret panels in the
trunk of Flores's car was unconstitutional is also frivolous.  Trooper Kruger did not need
probable cause to search those compartments because Flores gave his voluntary consent.
There is no indication that Flores ever limited his consent, and Flores presents no
evidence that Trooper Kruger exceeded the scope of the consent Flores gave him.
Therefore, because any motion by his attorney would have been meritless, Flores cannot
satisfy *Strickland*'s demanding burden of establishing his attorney was constitutionally

defective.  *See Smith v. Puckett*, 907 F.2d 581, 585, n.6 (5th Cir. 1990) ("Counsel is not

deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

### B.   Flores's Mental Health

In his second ground, Flores faults his attorney for failing "to investigate into [his]

mental health."  (Memo. at 7.)  He complains his attorney "failed to present crucial

mitigating mental health factor[s] to the court that a professional competent counsel

would have presented."  (*Id.*)  And he accuses his attorney of "simply" not thinking

"about the mental health strategy for the sentencing phase."  (*Id.*)

Although less clear, it seems Flores may also fault his attorney failing "to conduct

a reasonable investigation that would have revealed an alleged 'diminished capacity.'"

(*Id.* at 8.)  He complains his attorney "failed to reasonably investigate [his] mental state at

the time of [the] offense," and he complains that his attorney failed to "reasonably

investigate the factual circumstances of the offense."  (*Id.*)  He claims his "diminished

capacity significantly contributed to his commission of the offense."  (*Id.* at 10.)  Finally,

he faults his attorney for not seeking "a psychiatric evaluation."  (*Id.* at 8.)  Flores's

complaints, however, are unsubstantiated, conclusory, and belied by the record.

A prisoner "who alleges a failure to investigate on the part of his counsel must

allege with specificity what the investigation would have revealed and how it would have

altered the outcome of the trial."  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir.

1989).  Flores does not do this.  Regarding the factual circumstances of his offense, Flores

**Response to Motion Under 28 U.S.C. § 2255  - Page 14**

never identifies what his attorney failed to investigate, describe what evidence would have been uncovered, and explain how that would have changed the outcome of his case.

Regarding his mental state, that was meticulously detailed in his presentence report as discussed above, and Flores never identifies any additional evidence that supports his unsubstantiated claim of diminished capacity. He also fails to present any evidence that substantiates the need for a mental evaluation. Even so, his diminished-capacity claim is belied by the record. The presentence report recounts Flores admitting: "[H]e realizes he took a big risk and it was 'not worth it.'" (PSR ¶ 17.) At sentencing, Flores told this Court:

> I want to take responsibility for my actions. And while I'm in prison, I plan to get all the help I can from the doctors, so that I can stop hearing voices some day. Your Honor, and I know if I try real hard and listen to what they say, I could be normal again.

(Sent. Tr. at 5.) Thus, it is clear Flores understood what he was doing and the risks associated with it when he chose to transport kilograms of ice methamphetamine for $1,000.

Also, his claim that he should have undergone a mental-health evaluation is also belied by the record. The addendum to the report recounts:

> Since [Flores's] incarceration in the Randall County jail, Amarillo, Texas, [he] was evaluated by Dr. Sommerfeld who is employed as a psychiatrist with Texas Panhandle Mental Health Mental Retardation [] and was prescribed Fanapt, an anti-psychotic medication, which he is taking twice per day . . . . According to the medical department at the Randall County jail . . ., Dr. [] Sommerfeld conducted a psychological evaluation on October 1, 2010 [one month after Flores pled guilty], and [Flores] was diagnosed with schizophrenia.

**Response to Motion Under 28 U.S.C. § 2255  - Page 15**

(PSR Add. at 1.)  Thus, Flores did receive a psychiatric evaluation.  He presents no

evidence that anything contained in that evaluation would call into question his ability to

understand the nature and consequences of his criminal actions, his capacity to voluntary

consent to the search of his car, or to knowingly and intelligently plead guilty.

Finally, regarding his attorney's alleged failure to present his mental health in

mitigating his sentence, the record also belies this claim.  His attorney submitted what this

Court called, "a lengthy memorandum," that discussed Flores's past and present mental-

health issues.  (Sent. Tr. at 6.)  Applying the sentencing factors under section 3553(a),

Flores's attorney asked this Court to vary below the guideline range of 292-to-365

months and impose a sentence within the range of 188-to-235 months.  (Sent. Memo.)

She highlighted her arguments to this Court at the sentencing hearing.  (Sent. Tr. at 6–9.)

She was successful in that this Court sentenced Flores to 235 months in prison, a

significant variance below the 292-to-365 month range.  (Sent. Tr. at 9.)  Flores never

indicated he opposed the sentence his attorney advocated for, and he fails to present any

additional evidence that his attorney was derelict in discovering and presenting that would

have resulted in an even greater downward variance than he already received.

### C.    Appeal

In his section 2255 motion, Flores explains that he did not appeal because:

"Ignorance of the law coupled with learning disorder and rest of mental issues precluded

my capacity to request an appeal."  (Mot. at 3.)  In his section 2255 memorandum, Flores

states: "Counsel was constitutionally ineffective prior to the plea, at the plea, and at sentencing, and failed to file for a direct appeal, because counsel failed to conduct a reasonable investigation that would have revealed an alleged 'diminished capacity.'" (Memo. at 8.)  It is unclear if Flores is raising an issue regarding his failure to appeal. And it is unclear if Flores is attacking his attorney for failing to appeal or for failing to conduct an investigation into his mental capacity.  Flores does not explain what he means when he says "ignorance of the law . . . precluded [his] capacity to request an appeal." Flores's statements are particularly confusing since he never states that his attorney was constitutionally deficient for failing to inform him of his appellate rights, failing to make a reasonable effort to discover his intentions regarding an appeal, or failing to follow his instruction to appeal, if he so instructed.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).

What makes this potentially troubling is that it appears this Court failed to advise Flores of his appellate rights under Federal Rule of Criminal Procedure 32(j)(1)(B). (Sent. Tr. at 12.)  Also, there does not appear to be any indication in the record that Flores was aware of his appellate rights from another source.  Although the government has contacted Flores's attorney, because it is unclear if Flores has raised this issue against his attorney, it is unclear if the attorney-client privilege has been waived, permitting his attorney to discuss with the government her conversations with Flores regarding the appeal of his sentence.  *See United States v. Ballard*, 779 F.2d 287, 292 (5th Cir. 1986) ("A lawyer may reveal otherwise privileged communications from his clients in order to

**Response to Motion Under 28 U.S.C. § 2255  - Page 17**

recover a fee due him, or to defend himself against charges of improper conduct, without violating the ethical rules of confidentiality or the attorney-client privilege.").

Rule 32(j)(1)(B) requires a district court, after sentencing and regardless of the plea, to "advise the defendant of any right to appeal the sentence." The district court "must be meticulous and precise in following each of the requirements of Rule 32 in every case." *Peguero v. United States*, 526 U.S. 23, 27 (1999). This is because a district court's informing a defendant of his appellate rights serves important functions:

> It will often be the case that, as soon as sentence is imposed, the defendant will be taken into custody and transported elsewhere, making it difficult for the defendant to maintain contact with his attorney. The relationship between the defendant and the attorney may also be strained after sentencing, in any event, because of the defendant's disappointment over the outcome of the case or the terms of the sentence. The attorney, moreover, concentrating on other matters, may fail to tell the defendant of the right to appeal, though months later the attorney may think that he in fact gave the advice because it was standard practice to do so. In addition, if the defendant is advised of the right by the judge who imposes sentence, the defendant will realize that the appeal may be taken as of right and without affront to the trial judge, who may later rule upon a motion to modify or reduce the sentence. *See* Fed. Rule Crim. Proc. 35. Advising the defendant of his right at sentencing also gives him a clear opportunity to announce his intention to appeal and request the court clerk to file the notice of appeal, well before the 10-day filing period runs. *See* Rule 32(c)(5) ("If the defendant so requests, the clerk of the court must immediately prepare and file a notice of appeal on behalf of the defendant"); Fed. Rule App. Proc. 4(b) (establishing 10-day period for filing appeal, which may be extended for 30 days by district court for "excusable neglect").

*Id.* at 26–27. It is indisputable, however, that a district court's failure to give the Rule 32 appellate-rights admonishment is error. *Id.* at 27.

"A violation of [Rule 32(j)(1)(B)], however, does not entitle a defendant to collateral relief in all circumstances." *Id.* The prisoner is still required to show prejudice

from the error because the Supreme Court rejected any "general rule that a court's failure to advise a defendant of the right to appeal automatically requires resentencing to allow an appeal." *Id.* at 27–28. Thus, a prisoner is not entitled to relief based on a Rule 32(j)(1)(B) violation when the record shows "he had independent knowledge of the right to appeal and so was not prejudiced by the trial court's omission." *Id.* at 29.

Here, the record appears to show that the district court failed to give the proper appellate-rights admonishments under Rule 32(j)(1)(B). And nothing in the record seems to reveal that Flores was otherwise aware of his appellate rights. Because Flores is not clear by what he means when he says "ignorance of the law . . . precluded [his] capacity to request an appeal," and because Flores does not clearly claim his attorney was constitutionally defective for failing to discuss his appellate rights and options with him, further inquiry by this Court may be appropriate to determine whether Flores suffered any prejudice due to this Court's failure to admonish him in accordance with Rule 32(j)(1)(B). The government respectfully suggests that any additional inquiry include an order from this Court regarding whether the attorney-client privilege has been waived and that Flores's attorney may ethically disclose any conversations she had with Flores regarding his appellate rights and options.[2]

---

[2] The government called Flores's attorney on December 19, 2011, to discuss this issue. The government also sent her an email on the same day detailing the issue and attaching a copy of Flores's section 2255 motion and memorandum. As of the date of this filing, the government has not heard back from the defense counsel. Because this is around the holiday season, it is possible Flores's attorney is out on holiday leave. Should the government hear from Flores's attorney and learn information relevant to this issue, the government will seek leave from this Court to supplement the record with that information.

**Response to Motion Under 28 U.S.C. § 2255  - Page 19**

## CONCLUSION

Should further inquiry reveal that Flores was aware of his appellate rights and that

his attorney was not deficient in failing to appeal his sentence, the government

respectfully asks the Court deny Flores's section 2255 motion.

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

*s/ Frank L. Gatto*
FRANK L. GATTO
Assistant United States Attorney
Texas Bar No. 24062396
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817.252.5213
Facsimile: 817.252.5514
E-mail: Frank.Gatto@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on December 27, 2011, I electronically filed this response with the
clerk of court for the U.S. District Court, Northern District of Texas, using the electronic
case filing system of the court.  I also certify that a copy of this response was served on:
Sergio Omar Flores # 41063-177, FCI Phoenix, 37910 N. 45th Ave, Phoenix, AZ 85086,
by first class mail, return receipt requested No. 7010 1060 0001 7184 7225.

*s/ Frank L. Gatto*
FRANK L. GATTO
Assistant United States Attorney

**Response to Motion Under 28 U.S.C. § 2255  - Page 20**