IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SERGIO OMAR FLORES | § | |
| | § | |
| v. | § | 2:11-CV-247 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**REPORT AND RECOMMENDATION TO DENY**
**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Defendant SERGIO OMAR FLORES has filed with this Court a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. On November 6, 2012, the Court conducted an evidentiary hearing on this motion. Defendant was represented by appointed counsel at the hearing, and both defendant and his trial attorney testified. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge is of the opinion defendant is not entitled to relief and recommends the motion to vacate, set aside, or correct sentence be DENIED.

I.
FACTUAL AND PROCEDURAL HISTORY

In June of 2010, defendant Flores was stopped for speeding. *United States v. Flores*, 2:10-CR-039, "Presentence Report," doc. 38 [hereinafter PSR], pg. 2 (filed Oct. 7, 2010). Defendant's suspicious behavior led the police officer to ask for permission to search defendant's vehicle. *Id.* Defendant consented to the search, which revealed approximately six kilograms of 100-percent pure methamphetamine. *Id.* at 3.

Defendant was indicted in a one-count indictment for possession with intent to distribute methamphetamine. *Id.*, "Indictment," doc. 13 (filed Jun. 29, 2010). Defendant pled guilty and was

sentenced to 235 months' incarceration. *Id.*, "Judgment," doc. 42, pg. 1 (filed Nov. 19, 2010). Defendant did not appeal the conviction or sentence, but did file the instant motion pursuant to 28 U.S.C. § 2255.

## II. DEFENDANT'S ALLEGATIONS

In support of his contention that his conviction and sentence were imposed in violation of the Constitution or laws of the United States, defendant contends he received ineffective assistance of counsel based upon the following:

1.  Counsel's failure to file a motion to suppress challenging the existence of probable cause and the validity of defendant's consent.

2.  Counsel's failure to fully investigate the extent and severity of defendant's mental issues and present such to the Court in an attempt to receive a downward departure pursuant to 18 U.S.C. § 3553(a).

3.  Counsel's failure to properly inform and discuss with defendant his right to appeal.

## III. MERITS

In *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test for analyzing ineffective assistance of counsel claims. The *Strickland* test, which applies to ineffective assistance of counsel claims in guilty plea cases, requires a prisoner to demonstrate defense counsel's performance was both deficient and prejudicial. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

An attorney's performance is considered deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment to the United States Constitution. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064. That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's

performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S. Ct. at 2065.

In the context of a guilty plea, a defendant can satisfy the prejudice prong of *Strickland* by demonstrating that but for counsel's deficient performance, a reasonable probability exists that the defendant would not have pled guilty, but would have insisted on a trial. *Hill*, 474 U.S. at 58, 106 S.Ct. at 370. Similarly, in the context of a procedurally defaulted appeal, a defendant can satisfy the prejudice prong by demonstrating that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, [defendant] would have timely appealed." *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000).

### A. Failure to File a Motion to Suppress

In his first ground of error, defendant contends his attorney was ineffective because she failed to file a motion to suppress. While defendant Flores does not directly raise a Fourth Amendment claim in this case, the viability of his Fourth Amendment claim is "inextricably intertwined" with his claim of ineffective assistance of counsel for failure to file a motion to suppress. *See United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008). Consequently, the Court must engage in an analysis of the validity of the stop in order to determine whether counsel was ineffective for failing to file a motion to suppress. *See id.*

In June 2010, defendant was traveling eastbound on Interstate 40 when he was stopped for speeding. ("Presentence Report," doc. 38 [hereinafter PSR], pg. 2 (filed Oct. 7, 2010)). Defendant could not produce a driver's license to the police officer, but he did provide an Arizona Identification Card, explaining he had lost his Arizona driver's license. (*Id.*). Defendant also provided the vehicle's insurance card, which the officer noticed was newly purchased. (*Id.*). Upon

running a records check, the police officer discovered defendant did have a Texas driver's license, but that it was suspended, and he did not have an Arizona driver's license issued to him. (*Id.*). Upon returning to the vehicle, the police officer observed that defendant was nervous and would not make eye contact, there was a strong odor of air freshener in the vehicle, and there was a second set of New Mexico license plates on the front seat of the vehicle. (*Id.*). When the officer inquired as to the car's ownership, defendant indicated he was buying the vehicle "from a male named Adrian." (*Id.*). Defendant indicated he did not know Adrian's last name. (*Id.*). When the officer ran the license plates on the front seat of the car, they came back registered to a Ramon Serna. (*Id.*). Defendant told the officer Mr. Serna had placed the vehicle in Adrian's name. (*Id.*). At that point, the police officer sought, and received, consent to search the vehicle. (*Id.*). The police officer's post-consent, road-side search of the vehicle uncovered eight packages of methamphetamine; a further search of the vehicle at the local Department of Public Safety office yielded an additional five packages of methamphetamine. (*Id.* at 2-3).

Defendant now contends, "[c]ounsel failed to request a suppression hearing to challenge the consent given, and that the [police officer] did not have reasonable suspicion nor probable cause to search the vehicle." ("Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, doc. 1 [hereinafter Motion], pg. 4 (filed Oct. 19, 2011)).

### 1. Validity of Defendant's Consent to the Search

#### a. The Evidence Before the Court

Regarding his consent to the search, defendant states in his written pleadings to the Court, "[c]ounsel failed to challenge the voluntariness of the consent, by [sic] using Flores's mental disorder's [sic] properly presented to the court could have been strong grounds to invalidate the

consent given to [the police officer]." ("Memorandum in Support of 225 Motion," doc. 2 [hereinafter Memo], pg. 2 (filed Oct. 19, 2011)).

At the November 6, 2012, evidentiary hearing, defendant Flores testified as to his mental health. Defendant testified he has been diagnosed as paranoid schizophrenic and bipolar, *inter alia*. He testified that, while he now receives the necessary medication for his mental health issues, he was not on any medications at the time of the stop. Defendant did not deny consenting to the search of the vehicle. Instead, he testified he did not know how extensive the search would be and, because of his lack of knowledge of the law, he did not know he could refuse to consent to the search.

On cross-examination, defendant indicated he and trial counsel discussed the stop and his consent to the search. Defendant admitted he never told either the police officer or his trial attorney that he had difficultly understanding what the police officer was asking, nor did he tell his attorney he did not understand he could decline to consent when the police officer sought permission to search the vehicle.

Defendant's trial attorney, Ms. Bonita Gunden also testified. She stated she recalled watching the video of the road-side stop. According to Ms. Gunden, she watched the video to see if there were any possible grounds upon which to base a motion to suppress. Ms. Gunden testified it is her normal practice to file a motion to suppress if any grounds for doing so exist. After her review of the road-side stop, however, she did not see any grounds upon which she could base a motion to suppress. She indicated defendant likewise never told her he did not understand what the police officer was asking and what he was consenting to. Ms. Gunden further testified that when she spoke with defendant about the issue it appeared he did understand what he was doing when he consented to the search.

b.  Defendant Has Not Established Deficient Performance

Defendant avers his consent was not voluntary.  (Memo at 2).  In adjudicating this issue, the Court must consider both the voluntariness and whether the consent was an act of free will.  *See United States v. Jenson*, 462 F.3d 399, 406 (5th Cir. 2006) (citing *Chavez-Villarreal*, 3 F.3d at 127) (establishing to determine whether consent was validly given, the reviewing court must determine (1) whether consent was voluntary and (2) whether it was an independent act of free will).  In determining whether consent is voluntary, the courts utilize a six-factor test: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.  *United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993).  Fact-specific evidence is traditionally required when engaging in this six-factor analysis.  The development of that evidence is limited in this case because defendant pled guilty, and the issue is now presented collaterally in 28 U.S.C. § 2255 proceedings.  Acknowledging that the burden of proof is on defendant Flores, the Court will use the evidence before it to review whether grounds existed for trial counsel to file a motion to suppress.

As to the first three *Kelley* factors, there is no evidence Flores was in custody during the traffic stop, nor is there any evidence of coercion.  The defendant's testimony reflects he was cooperative.  Regarding the fourth factor, defendant states he was unaware of his right to consent.  For the sake of argument, the Court will accept defendant's testimony on this matter as true.  It also, however, accepts as true defendant's and Ms. Gunden's testimony that defendant never told counsel he did not know he could refuse consent.  Regarding defendant's education and intelligence, the

Presentence Report indicates defendant's records reflect he has an intelligence quotient level of 85 and has obtained a General Educational Development certificate. (PSR at 17). Regarding the final factor, Mr. Flores testified at the November 6, 2012 evidentiary hearing that he knew he was transporting something, he just did not know what it was. He also stated he did not know the police would find anything. Considering the totality of this limited evidence, defendant Flores has not established a motion to suppress should have been filed. More to this Court's primary concern in these proceedings, in evaluating counsel's actions, the Court is unable to hold that a motion to suppress was warranted or that counsel was aware of sufficient grounds upon which to base such a motion given the thoroughness of her investigation.

Beyond the six *Kelley* factors upon which a defendant can challenge the voluntariness of his consent to search, Mr. Flores contends counsel could have filed a motion to suppress based upon his mental condition. The PSR documents that Mr. Flores struggles with mental health issues. In fact, trial counsel effectively brought those issues to the Court's attention at sentencing. However, there is nothing in the evidence before the Court indicating defendant's mental health issues precluded his ability to validly consent to the search. The Presentence Report indicates that, despite the fact his mental issues were unmedicated, defendant maintained employment as a roofer up until one week prior to his arrest. (PSR at 17). Up until approximately one month before his arrest, when he was not medicated, defendant also lived with his then common-law wife and aided in rearing their three children. (*Id.* at 15). Regarding the day of the stop, defendant never testified his mental health issues rendered him unable to consent to the search. Rather, he challenged the consent because he did not know how extensive it would be and he did not know he could refuse to give consent. Neither one of these contentions provide a sufficient basis for a motion to suppress based on mental

deficiency. This is especially so where he never told his attorney about either potential issue.

In sum, defendant has failed to establish trial counsel performed deficiently because (I) he has not demonstrated any motion to suppress was warranted and (ii) he has not otherwise shown trial counsel knew of any potential grounds upon which a challenge to defendant's consent could be based. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064; *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding an attorney does not render ineffective assistance by failing to make futile motions or objections).

## 2. Justification for the Search

Regarding the basis for the police officer's request to search the vehicle, defendant avers after the police officer who stopped him "ran the computer check and it came back clear of any warrant's [sic], and deviated [sic] his suspicion on the plates that were inside the vehicle as they also came back clear, at that point [the police officer] had no reasonable suspicion, nor probable cause [sic] to search the vehicle." (Memo at 3).

As an initial matter, it does not appear a reasonable suspicion analysis is necessary in this case. A police officer is required to have reasonable suspicion to prolong a detention, but reasonable suspicion is not required if the original, justified detention is not prolonged. *See United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). There is no evidence before the Court that defendant's detention was prolonged. Consequently, it appears a determination as to whether the police officer had reasonable suspicion is unnecessary. Even if the detention were prolonged, however, evidence before the Court summarized below indicates the police officer had the requisite reasonable suspicion of criminal activity. *See id.*, 109 S.Ct. at 1585.

Ms. Gunden testified at the hearing that she reviewed the video of the stop and did not see any grounds upon which she could have based a motion to suppress. Her discussions with Mr. Flores confirmed her conclusion. Ms. Gunden's notes regarding whether there were any grounds for a motion to suppress based upon the reasonable suspicion issue, which were presented to the Court at the evidentiary hearing, are discussed *infra*.

The Presentence Report contains some details about the stop. According to the Presentence Report, even though the police officer's check of defendant did not reveal any outstanding warrants, it did indicate defendant's representation that he had an Arizona driver's licence was not true. (PSR at 2). It also revealed defendant's Texas driver's license, which defendant had not mentioned, was suspended. (*Id.*). At the point the police officer became aware that defendant did not have a valid driver's license, it seems unlikely he would have allowed defendant to continue driving. *See* Tex. Transp. Code Ann. § 521.457 (Vernon 2007).

Further, while a check of the license plates located in the vehicle did come back "clear," the check also revealed those plates were not registered to defendant. (*Id.*). Instead, the plates were registered to a Ramon Serna, who defendant indicated was the one who placed the vehicle in the name of the man from who defendant was purportedly buying the vehicle (whose last name defendant did not know). This information was a factor which gave the officer reasonable suspicion sufficient to prolong defendant's detention, if in fact the detention was prolonged. Defendant's argument likewise ignores the other indica with which the police officer was faced, such as the strong air freshener and defendant's nervous behavior and refusal to make eye contact. (*Id.*).

In addition to the Presentence Report are the notes Ms. Gunden took when she was reviewing the video of the stop, which were admitted as Government's Exhibit 1 at the evidentiary hearing.

Those notes indicate defendant's attorney saw additional reasons why a motion to suppress was not appropriate. For example, according to counsel's notes, not only did the police officer discover defendant's Texas driver's license was suspended, he found out defendant had eighteen active suspensions. Gvt's Ex. 1 at 1. Defendant told the officer he was going to see his sick mother in Oklahoma, but he had to look at a map of Oklahoma before he could say which town his mother was in. *Id.* at 2. These notes support counsel's representation to the Court that she reviewed the stop, considered the possibility of filing a motion to suppress, but could not justify filing such a motion based upon what she observed in the video.

There does not appear to be any grounds upon which a motion to suppress could have been filed based upon a lack of reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Consequently, based upon the evidence in the Presentence Report about the details of the stop, the Court cannot hold Ms. Gunden deficient for failing to file a motion to suppress. *See Koch*, 907 F.2d at 527.

Counsel was not deficient in her performance. Failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 2587-88, 91 L.Ed.2d 305 (1986). Rather, the decision to not file a motion to suppress can be intentional and strategic. *United States v. Chavez-Valencia*, 116 F.3d 127, 134 (5th Cir. 1997). Indeed, counsel are expected not to file baseless or frivolous motions. In this case, counsel's failure to file a motion to suppress was not due to counsel's failure to investigate the grounds for a potential motion to suppress or any other failure to render the full and adequate assistance expected of defense counsel. *See Kimmelman*, 477 U.S. at 384, 106 S.Ct. at 2588. To the contrary, counsel's determination not to file a motion to suppress was based upon sound strategy

after a thorough review of the traffic stop and circumstances surrounding the subsequent search. *See United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (explaining "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness"). Defendant's first ground of error is without merit.

### B. Failure to Present Mental Health Issues to the Court

In his second point of error, defendant contends he received ineffective assistance of counsel due to counsel's failure to fully investigate the extent and severity of defendant's mental health issues and present such to the Court in an attempt to receive a downward departure pursuant to 18 U.S.C. § 3553(a). According to Defendant, trial counsel "did not simply think about the mental health strategy for the sentencing phase." (Memo at 7). According to defendant, he requested a mental evaluation, but his attorney advised him the federal government did not have the money to conduct such an evaluation. (Memo at 8). Consequently, defendant avers, "[c]ounsel's fatal advice precluded the very needed mental evaluation, which affected every possible defense strategy, resulting in harsher sentence." (*Id.*).

The record belies this ground of error. Defendant's attorney filed a very thorough "Sentencing Memorandum" for the Court's consideration. (*Flores*, 2:10-CR-039, "Sentencing Memorandum," doc. 146 (filed Nov. 17, 2010)). In the pleading, counsel set forth a detailed explanation of defendant's mental health history. (*Id.* at 1-8). She additionally set out arguments regarding mitigating factors present in defendant's case. Finally, counsel asked the Court to apply 18 U.S.C. § 3553 and impose a sentence significantly less than the recommended guidelines sentencing range. (*Id.* at 17).

At sentencing, trial counsel reiterated the points she made in the Sentencing Memorandum, saying, "[f]irst and foremost are the substance abuse problems and mental issues of this particular defendant." (*Id.*, "Sentencing," doc. 44, pg. 7 (hearing conducted Nov. 19, 2010, transcript filed Sept. 14, 2011)). Counsel additionally pointed out the benefit of defendant's mental health treatment. (*Id.*). Counsel went through other mitigating factors and concluded, "[s]o for all of those particular reasons, I just think that the guideline range is totally inappropriate in this case. It's more than necessary, and it's just simply too severe." (*Id.* at 8). The Court proceeded to impose a sentence of 235 months' incarceration. (*Id.* at 9). Defendant's recommended sentencing range was 292 to 365 months' incarceration. (PSR at 18). Thus, the Court downwardly departed 57 months (or 4.75 years) from the recommended sentencing range.

The trial record alone defeats petitioner's claim of ineffective assistance of counsel. Clearly counsel did investigate, develop, and present defendant's mental health issues to the Court, and did so effectively—obtaining a significant downward departure for defendant. Defendant has failed to show how trial counsel acted deficiently, and for that reason alone this ground of error fails.

Additionally, however, the Court has before it the sworn testimony of defendant and trial counsel. At the hearing, defendant testified he was not on medication at the time he was arrested, but went on medication three to four months thereafter. He indicated he obtained medication because the jail authorities set up an appointment for him with Mental Health Mental Retardation (MHMR). The MHMR doctor evaluated defendant and placed him on medication. Defendant testified he did tell his attorney he was experiencing auditory and visual hallucinations, but he does not recall when he told her.

Ms. Gunden, defendant's trial attorney also testified as to defendant's mental health issues. Ms. Gunden stated defendant told her that he had been on medication for mental problems during a prior confinement. Ms. Gunden then went to prison officials and made sure they obtained defendant's medical records from that prior incarceration. When defendant told Ms. Gunden he was hearing voices, Ms. Gunden went to the prison officials and made sure defendant was put on the list for MHMR review. Ms. Gunden additionally testified she did research defendant's mental health background and knew defendant struggled with mental illness. She also testified, however, that her research (along with her personal interactions with defendant) indicated defendant's mental health problems never affected defendant's competency, and there was nothing in defendant's history upon which she could base a viable insanity defense.[1] Given this testimony, the Court cannot say defendant has established that counsel acted deficiently. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064. This ground of error is without merit.

## C. Failure to Inform of Appellate Rights

In his final point of error, defendant contends he received ineffective assistance of counsel because his trial attorney failed to advise him of his right to appeal. Specifically, in his 28 U.S.C. § 2255 motion, defendant indicates "[i]gnorance of the law coupled with learning disorder and rest of mental issue's [sic] precluded my capacity to request an appeal." ("Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, doc. 1, pg. 3 (filed Oct. 19, 2011)). This singular statement was located in the background section of the motion, and was not referenced in defendant's formal grounds of error. At the November 6, 2012, evidentiary

---

[1] In fact, defendant indicated to the probation officer preparing the PSR and to this Court in the evidentiary hearing that he agreed to transport the methamphetamine for $1,000.00 because he needed the money to buy his son a video game and pay off some bills. Defendant Flores indicated he knew the level of risk he undertook at the time and, after being caught, realized it was "not worth it." (PSR at 3).

hearing, however, counsel for defendant indicated defendant wished to pursue this claim as a formal ground of error. Counsel clarified defendant's claim is that he was never advised by counsel or the Court of his right to appeal, and he consequently received ineffective assistance of counsel for failure to advise him of those rights.

The Supreme Court has long held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477, 120 S.Ct. at 1035. Even if an appeal would not have any merit, an attorney's failure to file a requested notice of appeal is *per se* ineffective assistance of counsel. *Id.*, 120 S.Ct. at 1035. When a defendant is denied assistance of counsel on appeal, the reviewing court, upon a section 2255 motion, may order an out-of-time appeal. *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001). In order to demonstrate ineffective assistance of counsel, however, a defendant "has the burden to prove ineffectiveness by a preponderance of the evidence." *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000).

In his testimony, defendant stated counsel never advised him of his right to appeal. He admitted to signing a piece of paper trial counsel handed him after the sentencing hearing, but he denied knowing what he was signing.

Defendant's trial counsel, Ms. Gunden, testified regarding the steps she took to make sure defendant understood his appellate rights. Ms. Gunden first testified generally, as to the process through which she goes after every sentencing hearing with every defendant she represents. According to Ms. Gunden, after the sentencing hearing she informs the defendant that he has a right to appeal, and if he wishes to do so she will file a notice of appeal on his behalf. She then explains the process of appealing and the difficult standards involved in the appeal of a case where a

defendant had pled guilty.  Ms. Gunden testified that during this discussion she tells a defendant if he has any hesitations whether to appeal the case, then she will meet with him at a later time to discuss the issue further.  Throughout this process, Ms. Gunden stated, she watches the defendant for any signs of incomprehension.  Ms. Gunden testified specifically as to defendant Flores that he appeared to comprehend what she was telling him about his appellate rights.  She did not recall defendant Flores indicating he wanted to appeal the case.

    Ms. Gunden continued in her testimony that once she explains a defendant's appellate rights, her normal practice and procedure is to give the defendant a written notice of his right to appeal. Ms. Gunden testified she did this with defendant Flores, and the written "Right to Appeal" form was admitted during the evidentiary hearing as Government's Exhibit 4.  The form includes the caption of the case and the date on which the form is presented.  In this case, the form was presented on November 19, 2010, which was the day of the sentencing hearing.  Gvt's Ex. 4.  The form sets forth that defendant was advised of his appellate rights, the ten-day notice of appeal deadline, the right to counsel on appeal, and that he "fully discussed with my attorney the potential issues for appeal." *Id.* Following this section is a section for defendant's attorney with two options—indicating it was either defense counsel's advice to appeal or not to appeal. *Id.* In this section, the option indicating it was Ms. Gunden's advice to not appeal the case has a checkmark next to it. *Id.* Then, there appears a similar section for the defendant to indicate that he has either advised his attorney to appeal or to not appeal the case. *Id.* In this section, the option indicating defendant had advised his attorney that he did not wish to appeal has a checkmark next to it. *Id.* Directly to the right of the selected option reflecting no desire to appeal appears defendant Flores's signature. *Id.*

The Court, having observed defendant's demeanor during his testimony, finds defendant's testimony and the statements in his pleadings unpersuasive. Conversely, the Court accepts as true Ms. Gunden's testimony. The Court finds defense counsel thoroughly reviewed defendant Flores's appellate rights with him. Based upon the testimony of Ms. Gunden, defendant Flores knew and understood his appellate rights. Defendant himself did not deny signing the "Right to Appeal" form, but instead testified he did not know what he was signing. Given Ms. Gunden's testimony detailing how she thoroughly explained defendant's appellate rights to him before presenting the notice of appeal form, which the Court accepts as true, the Court is unable to accept defendant Flores's testimony that he did not know what he was signing.

Thus, the Court concludes, based upon the evidence before it, an appeal was not filed in this case as a result of defendant's knowing and informed instructions to his attorney that he did not wish to appeal. This conclusion is supported not only by the testimony at the evidentiary hearing but also by the documents before the Court, one of which contains defendant's signature on a page full of admonishments of appellate rights and directly next to defendant's indication that he did not wish to pursue them. *See* Gvt's Ex. 3.

Because the Court finds Mr. Flores's claims not credible, defendant Flores has failed to carry his burden of showing by a preponderance of the evidence he received ineffective assistance of counsel on appeal. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Montoya*, 226 F.3d at 408. Defendant has not demonstrated his attorney's performance was deficient. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064. Consequently, defendant's third point of error is without merit and should be denied.

IV.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge that the Motion to Vacate, Set Aside, and Correct Sentence, filed by defendant SERGIO OMAR FLORES be DENIED.

V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 30th day of November 2012.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).